## CONCLUSION

Respondent's suspension from the practice of law is continued until January 1, 2014. Should respondent apply for reinstatement, his application for reinstatement must demonstrate that respondent has paid all delinquent dues to the Nebraska State Bar Association; has completed at least 10 hours of continuing legal education, including 2 hours of ethics or professional responsibility instruction, within 12 months immediately preceding the date of respondent's application; has reimbursed his client, Schlecht Construction, all funds previously paid to respondent as fees; and has paid all costs assessed against respondent herein. Respondent shall comply with Neb. Ct. R. § 3-316, and upon failure to do so, he shall be subject to punishment for contempt of this court. Respondent is also directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) and 3-323(B) within 60 days after the order imposing costs and expenses, if any, is entered by the court.

Judgment of suspension.

---

State of Nebraska, appellee, v.
Daniel Morgan, appellant.
___ N.W.2d ___

Filed September 20, 2013.    No. S-12-410.

1. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

2. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.

3. **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact, and, in particular, determinations regarding whether counsel was deficient and whether the defendant was prejudiced are questions of law.

4. **Jury Instructions.** Whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case.

5. **Homicide.** The absence of a sudden quarrel is not an element of the crime of murder in the first degree.

6. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

7. **Postconviction: Effectiveness of Counsel: Records: Appeal and Error.** In order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review.

8. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

9. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

10. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

11. ____: ____. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

12. ____: ____. To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

13. **Effectiveness of Counsel: Presumptions: Appeal and Error.** The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice.

14. **Effectiveness of Counsel: Proof.** In an ineffective assistance of counsel claim, deficient performance and prejudice can be addressed in either order. If it is more appropriate to dispose of an ineffectiveness claim due to the lack of sufficient prejudice, that course should be followed.

15. **Verdicts: Juries: Jury Instructions: Presumptions.** Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.

Appeal from the District Court for Scotts Bluff County: RANDALL L. LIPPSTREU, Judge. Affirmed.

David S. MacDonald, Deputy Scotts Bluff County Public Defender, for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CASSEL, J.

## I. INTRODUCTION

Escalating tensions culminated when Daniel Morgan shot and killed Dominic Marquez outside of Marquez' home during an altercation. Following a jury trial, the district court convicted Morgan of first degree murder and use of a firearm to commit a felony. In this direct appeal, we first reject Morgan's challenges to the step jury instruction relating to the charge of first degree murder and the court's refusal to give a "negative element of 'sudden quarrel'" instruction. We reason that (1) we have repeatedly upheld the use of a step instruction, (2) the elements of first degree murder exclude any reference to "sudden quarrel," and (3) the jury's presumed adherence to the step instruction precludes any prejudice regarding the rest of the instruction. We then turn to Morgan's four claims of ineffective assistance of counsel, finding the record insufficient to address two of them and concluding the others lack merit. Accordingly, we affirm the judgment of the district court.

## II. BACKGROUND

Conflict arose between Morgan and Marquez over Megan Mitchell, who began dating Morgan in July 2010 after an earlier relationship with Marquez that resulted in the birth of a child.

On May 13, 2011, Morgan's frustration with Marquez came to a head. Morgan decided to go to Marquez' house in order to talk to Marquez and "kind of force the issue, either convince him to back off . . . or see . . . if he was going to

back down or start a fight." Morgan sent Mitchell a text message at 12:56 p.m. which stated, "'I'm going for [Marquez], that's my only purpose now, just how it goes.'" At around 1 p.m., Morgan sent Mitchell another text message which stated, "'[Marquez' child] won't ever know him, I will take that as a bonus.'"

Morgan drove his Jeep Grand Cherokee to Marquez' house. As Marquez was leaving the house in his Chevrolet Avalanche, he "ram[med] into" Morgan's Jeep. Morgan grabbed a firearm that was underneath his back seat, "chambered a round," and fired at Marquez' Avalanche. Morgan testified that Marquez' Avalanche was "under power" and next to Morgan's Jeep at the time Morgan began firing. When Marquez backed his Avalanche into Morgan's Jeep, the Jeep was pushed sideways and Morgan was unable to disengage his Jeep from the Avalanche. Morgan emptied an entire clip while both vehicles were moving. Morgan reloaded with a second clip and continued firing in an attempt to get Marquez to "back off." Morgan fired approximately 12 rounds of the second clip, but he still was unable to disengage his Jeep from the Avalanche. Morgan then got out, walked to the front of his Jeep, and fired the remainder of the rounds at the Avalanche. At that point, Marquez "let [Morgan] off enough" that Morgan could get back in the Jeep and leave.

Neighbors provided differing accounts of the sequence of events. One neighbor testified he heard a noise that he thought was the sound of firecrackers and then saw somebody shooting a gun out of a vehicle. He then heard a noise that sounded like metal hitting metal and saw a person get out of the Jeep, walk around to the front passenger side of the Jeep, and begin shooting. A different neighbor testified that he heard a scraping sound and then a series of pops. A third neighbor heard some popping sounds outside and then heard the crash of two vehicles. She testified that she saw Marquez' vehicle backing out of the driveway and "then the other vehicle like rammed in to where the truck bed would be and like it was kind of pinned." She saw a man get out of the vehicle, go around to the front of Marquez' vehicle, raise his arm toward Marquez' windshield, and then she heard more popping sounds.

Morgan testified that all of the shots were fired after the Avalanche hit his Jeep. He denied planning or intending to kill Marquez. Rather, he testified that he fired the gun because Marquez "rammed into [his Jeep] at full speed" and prevented him from leaving. Morgan admitted that he fired toward the driver's seat, but he testified that he did not intend to shoot Marquez in the head. Marquez died of multiple gunshot wounds. His body had six gunshot wounds to the left side of the forehead, neck, and chin.

The jury returned a verdict finding Morgan guilty of first degree murder and using a firearm to commit a felony. The district court sentenced Morgan to life imprisonment for the first degree murder conviction and a consecutive term of 17 to 34 years' imprisonment for the use of a firearm conviction. Morgan timely appeals.

## III. ASSIGNMENTS OF ERROR

Morgan assigns that the district court erred in instructing the jury by (1) refusing to give his requested instruction on the negative element of "sudden quarrel" in the second degree murder instruction; (2) giving a jury instruction that was confusing and that "effectively instructed the jury to not consider" the lesser-included offenses of second degree murder and manslaughter; and (3) refusing to give his requested instruction on the constitutional right to defend self, family, home, and others.

[1] Morgan's brief contains no argument directed toward the last assignment of error regarding jury instructions. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[1] Because Morgan did not make an argument specific to this alleged error, we do not consider it.

Morgan also assigns that he was denied the effective assistance of trial counsel by counsel's failure to (1) retain ballistic and accident reconstruction experts, (2) object to the jury's seeing Morgan in shackles, (3) object to the prosecutor's referring to the events of the day as "murder," and (4) object or

---

[1] *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010).

file a motion in limine to prevent evidence envelopes from being published to the jury with the word "murder" displayed on them.

## IV. STANDARD OF REVIEW

[2] Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[2]

[3] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact, and, in particular, determinations regarding whether counsel was deficient and whether the defendant was prejudiced are questions of law.[3]

## V. ANALYSIS

### 1. Jury Instructions

The step jury instruction given by the court, to which Morgan objected, was similar to the language of pattern jury instruction NJI2d Crim. 3.1. Consistent with NJI2d Crim. 3.1, the instruction given by the court directed the jury to decide whether the State had proved each element of first degree murder beyond a reasonable doubt and, if so, "then you must find the defendant guilty of first degree murder and stop." But if the jury found that the State had not proved the material elements of first degree murder, the jury was instructed to proceed to consider the elements of the lesser-included offenses of second degree murder and manslaughter.

[4] The district court did not err in using a step instruction with language similar to a pattern jury instruction. Although we have recently found deficiencies in the content of a step instruction in the circumstances of a particular case,[4] we have consistently rejected challenges to the use of a step

---

[2] *State v. Valverde, ante* p. 280, ___ N.W.2d ___ (2013).

[3] *State v. Pittman*, 285 Neb. 314, 826 N.W.2d 862 (2013).

[4] See *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

instruction.[5] Whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case.[6] The court did not err in utilizing a step instruction.

[5] Morgan's proposed jury instruction on the "negative element of 'sudden quarrel'" has no place in an instruction on first degree murder. Under the relevant portion of Neb. Rev. Stat. § 28-303 (Reissue 2008), a person commits murder in the first degree if he or she kills another person purposely and with deliberate and premeditated malice. Thus, the three elements which the State must prove beyond a reasonable doubt to obtain a conviction for first degree murder are that the defendant (1) killed another person, (2) did so purposely, and (3) did so with deliberate and premeditated malice.[7] The absence of a sudden quarrel is not an element of the crime of murder in the first degree. Because the absence of a sudden quarrel is not an element of the crime, the court did not err in refusing to include it as an element in the instruction given to the jury.

[6] The district court's refusal to give Morgan's proposed jury instruction in the balance of the step instruction could not be reversible error, because Morgan suffered no prejudice. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[8] Morgan's proposed instruction included under second degree murder that he "did so intentionally, but without premeditation" and that he "did not do so as the result of a sudden quarrel." But the jury did not need to consider the elements of second degree murder, because it concluded that the State had proved the elements of first degree murder. In

---

[5] See, e.g., *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012); *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011).

[6] *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

[7] *Id*.

[8] *State v. Sinica*, 277 Neb. 629, 764 N.W.2d 111 (2009).

*State v. Alarcon-Chavez*,[9] we concluded that a step instruction could not have been prejudicial, because the jury convicted the defendant of first degree murder; thus, the jury did not reach the differences between second degree murder and manslaughter upon a sudden quarrel. We reach the same conclusion in the case before us. Because the jury convicted Morgan of first degree murder, the jury properly did not proceed to consider the elements of second degree murder. Thus, Morgan was not prejudiced and his substantial rights were not affected by the remainder of the step instruction. Although at oral argument the State suggested that we should nonetheless opine on the correctness of the second degree murder instruction, we find it unnecessary to do so in resolving the case before us and decline the State's invitation.

## 2. Claims of Ineffective Assistance of Counsel

[7] Because different attorneys represented Morgan at trial and on direct appeal, he must now assert any known or apparent claims of ineffective assistance of counsel. Under Nebraska law, in order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review.[10] Morgan raises four instances of alleged ineffective assistance of counsel, which we discuss below.

[8,9] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.[11] An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.[12] As

---

[9] *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012).

[10] *State v. Watt, supra* note 6.

[11] *Id*.

[12] *Id*.

discussed below, the record is not sufficient to address two of Morgan's claims.

[10-14] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[13] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[14] To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[15] To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[16] The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice.[17] Deficient performance and prejudice can be addressed in either order. If it is more appropriate to dispose of an ineffectiveness claim due to the lack of sufficient prejudice, that course should be followed.[18]

We now address each claim of ineffectiveness raised by Morgan.

### (a) Failure to Retain Experts

Morgan asserts that counsel performed deficiently by failing to retain an expert who could have provided a scientific basis for Morgan's explanation of events, i.e., the firing of certain shots, where the shots originated, and the sequence of events. He argues that an accident reconstructionist and a ballistics expert could have explained certain matters to support the defense theory. The parties agree—as do we—that the record

---

[13] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[14] *State v. Watt, supra* note 6.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

is insufficient to review this claim. We make no comment whether Morgan's allegations regarding this claim would be sufficient to require an evidentiary hearing in the context of a motion for postconviction relief. We simply decline to reach this claim on direct appeal, because the record is insufficient to do so.

### (b) Failure to Object to Shackles

Prior to trial, the district court ordered that Morgan "shall appear at all times in the presence of prospective jurors in civilian clothing and without shackles." Morgan argues that his counsel performed deficiently by failing to object to the jury's seeing Morgan brought to court every day in shackles. The record contains no information regarding any circumstances where the jury may have seen Morgan in shackles. Once again, we make no comment on the sufficiency of the allegation in the context of a motion for postconviction relief. We agree with the parties that the record is insufficient to review this claim on direct appeal. Accordingly, we do not reach it.

### (c) Failure to Object to "Murder" Reference

During the State's cross-examination of Morgan, the prosecutor asked the following question: "And you maintained that relationship from that point until May 13th, the time of the murder?" Defense counsel did not object. Morgan argues, "In such a context it was presumptuous, inflammatory[,] and conclusory and invaded the province of the jury to decide if it was [m]urder, [m]anslaughter, or self defense."[19]

[15] Morgan cannot establish prejudice by counsel's failure to object, because the jury was instructed that statements or questions by the attorneys are not evidence. Instruction No. 1 stated in part that "what the attorneys say is not evidence." Instruction No. 5 provided a list of things that are not evidence, the first of which was "[s]tatements, arguments, and questions of the lawyers for the parties in this case." Absent

---

[19] Brief for appellant at 27.

evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.[20] Because we must presume that the jury followed the instructions and did not treat counsel's fleeting reference to "murder" as evidence, Morgan cannot demonstrate a reasonable probability that the result of the proceeding would have been different if counsel had objected.

### (d) Failure to Prevent Evidence Envelopes From Being Published With Word "Murder" Displayed

Morgan contends that counsel was ineffective in failing to file a motion in limine or to object at trial to prevent the evidence envelopes for certain exhibits from being published to the jury with the word "murder" printed on them. Morgan contends that "[i]t amounted to [a] repetitive drum beat by the police of 'Murder,' 'Murder,' 'Murder.' Twenty nine times."[21]

Again, Morgan cannot demonstrate a reasonable probability that the result of the proceeding would have been different if counsel had filed a motion in limine or objected. The evidence envelopes were marked with a description of the contents, location where the evidence was found, the investigator or investigators who recovered the evidence, Morgan's name, Marquez' name, and the word "murder." Law enforcement officers used "murder" in a general sense to refer to an unlawful killing that they were investigating rather than in a technical or legal sense. And the jury was instructed in part: "The fact that the state has brought these charges is not evidence of anything. The charges are simply an accusation, nothing more." Further, the jury was instructed that it could return one of four verdicts: guilty of first degree murder, guilty of second degree murder, guilty of manslaughter, or not guilty. Again, we presume that the jury followed the instructions given by the court.[22] Like the charges brought by the State, law enforcement's placement of the word "murder" on its evidence envelopes during its investigation is

---

[20] *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010).

[21] Brief for appellant at 27.

[22] See *State v. Sandoval, supra* note 20.

not evidence of anything. We conclude that Morgan has not established prejudice by counsel's failure to object or to otherwise keep the evidence envelopes from being published to the jury with the word "murder" on them.

## VI. CONCLUSION

We conclude that there was no prejudicial error in the district court's giving of the step jury instruction or in its refusal to give Morgan's proposed instruction. We further conclude that two of Morgan's claims of ineffective assistance of counsel are without merit, but that the record is insufficient to review the other two claims.

AFFIRMED.

———————————

STATE OF NEBRASKA, APPELLEE, V.
WA'IL MUHANNAD, APPELLANT.
___ N.W.2d ___

Filed September 20, 2013.    No. S-13-042.

1. **Motions for Mistrial: Pleadings: Prosecuting Attorneys: Intent: Appeal and Error.** While the denial of a plea in bar generally involves a question of law, an appellate court reviews under a clearly erroneous standard a finding concerning the presence or absence of prosecutorial intent to provoke the defendant into moving for a mistrial.
2. **Double Jeopardy.** Traditionally, the Double Jeopardy Clause has been viewed as safeguarding three interests of defendants: (1) the interest in being free from successive prosecutions, (2) the interest in the finality of judgments, and (3) the interest in having the trial completed in front of the first tribunal.
3. **Constitutional Law: Double Jeopardy.** The constitutional protection against double jeopardy does not mean that every time a defendant is put to trial before a competent tribunal, the defendant is entitled to go free if the trial fails to end in a final judgment.
4. ____: ____. Balanced against a defendant's interests in having a trial completed in front of the first tribunal is society's right to one full and fair opportunity to prove the defendant's guilt.
5. ____: ____. When society is deprived of its right to attempt to prove a defendant's guilt in a single prosecution because of a trial error, the interests of society in vindicating its laws generally outweigh the double jeopardy interests of the defendant.
6. **Double Jeopardy: Motions for Mistrial.** It is the general rule that where a court grants a mistrial upon a defendant's motion, the Double Jeopardy Clause does not bar a retrial.